## JORDAN *v.* WIXSON.

1. AUTOMOBILES—NEGLIGENCE—LAW OF THE ROAD—PERSONAL INJURIES.

In an action for injuries sustained in a collision with defendant's automobile, language of the trial court, in the charge to the jury, that plaintiff was "bound to use every reasonable means to avoid a collision," read in connection with other instructions, *held*, cured or modified so as to avoid prejudice.

2. SAME.

*Held*, that the testimony warranted a verdict and judgment for the defendant on the theory of contributory negligence.

Error to Calhoun; North, J. Submitted October 18, 1915. (Docket No. 149.) Decided December 21, 1915.

Case by Jesse Jordan against Don C. Wixson for personal injuries. Judgment for defendant. Plaintiff brings error. Affirmed.

*R. G. Leitch,* for appellant.

*Joseph L. Hooper,* for appellee.

MOORE, J. This case was brought to recover damages for personal injuries received by the plaintiff, in a collision between his one-horse wagon and an automobile owned and driven by the defendant. The case was tried by a jury, which returned a verdict in favor of the defendant. A motion was made for a new trial. In overruling the motion the judge stated, in part, as follows:

"While the testimony of the plaintiff as given probably raised a question which should have been, and was, left to the jury to pass upon, still under his own testimony it may well be doubted as to whether or not the defendant was not entitled to have the verdict directed by the court."

The plaintiff was going west driving an old gentle horse hitched to a truck wagon. There was a bridge in the highway over a creek. The plaintiff left the bridge at his right, driving through the creek, and after watering his horse continued on his journey west. Shortly after he rejoined the highway, his attention was diverted by a threshing machine, which was 10 or 12 rods away in front and to the right of him. The road west of him was slightly upgrade and was in plain view for 25 or 30 rods. It is plaintiff's claim that he was driving on the right side of the traveled portion of the highway, that he neither heard nor saw, though his eyesight and hearing were good, the automobile until it was within 10 feet of him, when it almost instantly struck the rear wheel of his wagon, injuring it somewhat and hurting the plaintiff.

189 Mich.—19.

It is the claim of defendant, who was driving his own automobile, his wife and a lady friend being on the back seat, that when he was 12 or 15 rods away from the plaintiff he signaled with his horn, and did so several times; that he slowed down his machine and turned completely out of the traveled part of the way, and, supposing the plaintiff would give part of the right of way, expected to pass in safety; that he passed the horse and the front part of the wagon, and would have passed the whole of it if the road had not narrowed back of the wagon so that to avoid going into the ditch, which was 3 or 4 feet deep, he had to turn toward the traveled part of the road, and in doing so hit the back wheel of the wagon; and that he stopped his automobile within 3 feet of the rear part of the wagon.

Some of the men who were at the threshing outfit were at the scene of the accident within two or three minutes, and they were called as witnesses by the plaintiff. They say the hind wheels of the automobile were just about opposite the back tracks of the wagon, that the tracks of the wagon were nearly in the middle of the road, that the automobile tracks showed it was being driven on the right side of the road, and if the automobile had kept straight ahead it would not have touched the wagon, but if it had kept straight on it would have gone into a three-foot ditch.

A witness who seemed to be entirely disinterested gave the following version of the occurrence:

"I was along that road on the day the accident occurred. I was going west at the time, following Mr. Jordan. I had just crossed the bridge. I imagine I was 15 or 20 rods behind him. I was driving a double team. Mr. Jordan was in the center of the highway. Mr. Wixson was coming down the hill, and he was not coming at a very rapid pace. He was going at the average gait of an automobile. I think he was not going at a rapid rate. Mr. Jordan was very busy engaged

watching them thresh, and was not paying attention to what was going on in the road. Mr. Wixson turned out to his own side of the road and gave him all he could. Mr. Wixson had to hit him or go into the ditch himself. He sounded his horn several times. It was sounded loudly enough so that I could hear it from where I was. Both women jumped up from the back seat and hollered. Mr. Wixson hollered himself, 'Get out of the way.' From what I observed there, and from the position of Mr. Jordan's wagon in the center of the road, it was impossible for Mr. Wixson to have got by there without going into the ditch himself, or without striking the carriage. He gave him sufficient warning so that he had a chance to have observed that there was danger ahead. After they got Mr. Jordan into the road and fixed up, he stood there, and he says: 'I am awfully sorry. It was my fault.' He says: 'I didn't hear you. Why didn't you stop?' Mr. Wixson did not go over two or three feet beyond the point where he struck the wagon. I observed Mr. Jordan looking over at the threshing machine. I could not help but see him. His horse was walking along very slowly."

All of the witnesses who saw the transaction except the plaintiff testified substantially the same as the witness whose testimony we have quoted.

The errors claimed are (we quote from the brief of counsel) :

*First,* error in the court's charge as to the degree of care required of the plaintiff.

*Second,* error in the court's charge in regard to the degree of care required of the defendant.

*Third,* error in refusing to give proper requests to charge.

Counsel quote a few sentences from different portions of the charge, and say they were improper statements of the law. The following is an instance:

"Bear in mind that the law also places the duty upon the plaintiff in this case to exercise the same degree of care and caution as he approached the automobile from the one direction as is placed upon the driver of

the automobile under the circumstances of this case. In other words, the plaintiff himself was bound to use every reasonable means to avoid a collision between the two approaching vehicles."

The argument is (we again quote from the brief) :

"This court has recognized the difference between the use of 'every reasonable precaution' and ordinary care, and has reversed a case for the error of the trial judge in charging that a party must use both." *Levyn* v. *Koppin*, 183 Mich. 232 (149 N. W. 993).

The trial judge, after stating the claims of the parties, charged the jury, in part, as follows:

"I think at the outset it is advisable for me to read to you, from the motor vehicle statute, portions which may apply to the issue which is to be submitted to you, and the material portions of which are, in substance, as follows:

" 'Every motor vehicle operated and driven upon the public highways of this State shall be provided with adequate brakes sufficient to control the vehicle at all times and a suitable adequate bell, horn, or other device for signalling. Whenever a person operating a motor vehicle shall meet on the highway any other persons riding or driving a horse or horses or other draft animal or any other vehicle the person operating such motor vehicle shall seasonably turn the same to the right of the center of the traveled portion of the highway while the person approaching shall likewise turn from the center of the traveled portion of the highway so as to pass the motor vehicle on the opposite side of the center of the highway to which the motor vehicle is being turned.

" 'No person shall operate a motor vehicle upon the public highway at a rate of speed greater than is reasonable and proper, having regard to the traffic and the use of the highway, or so as to endanger the life or limb of any person or the safety of any property and shall not in any event while upon any highway run at a higher rate of speed than twenty-five miles per hour.

" 'Upon approaching a person walking in the roadway of a public highway or a horse or horses or other draft animals being led, or driven thereon, the person operating the motor vehicle shall slow down to a speed not exceeding ten miles an

hour and give reasonable warning of its approach and use every reasonable precaution to insure the safety of such person or animal.' * * *

"If you find from the evidence in this case that the defendant did not comply with this duty, and the injury resulted from his failure to do so without any negligence on the part of the plaintiff concurring, then plaintiff would be entitled to a verdict.

"You are further instructed that it was the duty of the defendant, when approaching plaintiff and his rig, to slow down to a rate of speed not exceeding ten miles per hour, and give reasonable warning of the approach of his automobile, and also to use every reasonable precaution to insure safety of the plaintiff and his horse; and if you find that the defendant did not slow down to a speed of ten miles per hour or less, upon approaching the plaintiff, and that the injury to plaintiff resulted from his failure to do so and without any negligence upon the part of the plaintiff; and if you find that the defendant did not use every reasonable precaution to insure the safety of the plaintiff and his horse upon so approaching the plaintiff, and that the injuries resulted from defendant's failure so to do and without negligence on the part of the plaintiff—your verdict as before stated would be in favor of the plaintiff. But in that regard, gentlemen, you should bear in mind that the law also places the duty upon the plaintiff in this case to exercise the same degree of care and caution as he approached the automobile from the one direction as is placed upon the driver of the automobile under the circumstances of this case. In other words, plaintiff himself was bound to use every reasonable means to avoid a collision between the two approaching vehicles."

It is clear, when that part of the charge which is criticised is read in connection with what precedes and follows it, that the criticism is shown to be without merit, and it distinguishes the instant case from *Levyn* v. *Koppin, supra.*

The charge was long, filling more than ten pages of the printed record, and fully covered every phase of

the case. We do not think it misled the jury. We do not see how they could have arrived at a different verdict under the evidence.

Judgment is affirmed.

BROOKE, C. J., and PERSON, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.